UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEAN BLALOCK, | : |
|     Plaintiff, | : |
| | : |
| v. | :   Case No: 3:04cv1519 (PCD) |
| | : |
| OFFICER JEFFREY BENDER, | : |
|     Defendant. | : |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging false arrest and intentional infliction of emotional distress. (Am. Compl. ¶ 1.) Defendant moves, pursuant to Federal Rule of Civil Procedure 56(b), for summary judgment. Plaintiff has failed to file a memorandum in opposition to Defendant's motion. For the following reasons, Defendant's Motion for Summary Judgment [Doc. No. 37] is **granted**.

**I.**  **BACKGROUND**

Local Rule 56(a)(1) requires the party moving for summary judgment to file a "Local Rule 56(a)(1) Statement" setting forth "each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. Loc. Civ. R. 56(a)(1). The rule provides that "[a]ll material facts set forth in said statement will be deemed admitted unless controverted by" the plaintiff's Local Rule 56(a)(2) Statement, which should state whether the material facts set forth in the moving party's Local Rule 56(a)(1) Statement are admitted or denied. D. Conn. Loc. Civ. R. 56(a)(1)-(2). Plaintiff has failed to file a memorandum in opposition to Defendant's motion for summary judgment and has failed to file a Local Rule 56(a)(2) Statement controverting the material facts set forth in Defendant's Local Rule 56(a)(1) Statement.

Accordingly, the material facts set forth in Defendant's Local Rule 56(a)(1) Statement—to the extent they are supported by the evidence in the record—are deemed admitted. Compare SEC v. Global Telecom Servs. L.L.C., 325 F. Supp. 2d 94, 109 (D. Conn. 2004) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."), with Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004) (holding that even when a motion for summary judgment is unopposed, courts cannot rely solely on the facts asserted in the moving party's Rule 56(a)(1) Statement, but "must be satisfied that the citation to evidence in the record supports the assertion").

On or about December 6, 2002, Plaintiff was a Senior at Wolcott High School ("WHS"), where Defendant, Wolcott Police Officer Jeffrey Bender, was the school resource officer. (Def.'s Loc. R. 56(a)(1) Statement ¶ 1.) Mary Devaney, a teacher at WHS, was assigned as a monitor in the WHS cafeteria at 9:42 a.m. on December 6, 2002, when she observed Plaintiff and "J.P.," a then-Freshman at WHS, sitting at a table in the cafeteria. (Id. ¶¶ 3-5.) Ms. Devaney observed Plaintiff pass an object to J.P., which he reportedly placed in his hooded sweatshirt. (Id. ¶ 5.) Ms. Devaney reported the incident to Officer Bender, who in turn reported it to Patrick Delcioppo, an assistant principal at WHS. (Id. ¶¶ 6-7.) Mr. Delcioppo brought J.P. into his office and questioned him about what he and Plaintiff had exchanged, whereupon J.P. told Mr. Delcioppo that Plaintiff had given him a box of cigarettes which contained marijuana. (Id. ¶¶ 8-9.) According to the Wolcott Police Department incident report, the box contained several cigarettes and a green, leafy substance believed to be marijuana. (Id. ¶ 10; see also Exh. B to Def.'s Mot. Summ. J.) Defendant then called Plaintiff into his office and read him his

constitutional rights, however, Plaintiff denied that he owned or had given the cigarette box to J.P. (Def.'s Loc. R. 56(a)(1) Statement ¶ 11.) Plaintiff was not arrested at that time and returned to class. (Id.)

Defendant later met with J.P. and his legal guardian at the Wolcott Police Department, where he obtained a sworn, written statement from J.P. (Id. ¶ 12; see also Exh. D to Def.'s Mot. Summ. J.) J.P. stated that Plaintiff approached him at his locker in the WHS hallway and asked him to hold something for him. (Exh. D.) J.P. further stated that he followed Plaintiff into the WHS cafeteria, where Plaintiff handed him a pack of cigarettes under a table that J.P. put into the pocket of his hooded sweatshirt. (Id.) According to J.P., Plaintiff told them that he needed him to hold the package for him because he was feeling "mad heat" and that he would come back for the package "when the heat was off." (Id.) J.P. also stated that when Plaintiff asked him to hold something, he "knew he was talking about drugs," in part, because J.P. had previously purchased marijuana from Plaintiff. (Id.) Defendant arrested J.P. and charged him with possession of marijuana. (Def.'s Rule 56(a)(1) Statement ¶ 16.)

Plaintiff, in his deposition, presented a different account of what transpired on the morning of December 6, 2002. Specifically, Plaintiff testified that he arrived at school early that morning—on or around 7:15 a.m.—and was seated at a table in the WHS cafeteria with a group of friends. (See Pl.'s Dep. 19:1-20:17, Exh. A to Def.'s Mot. Summ. J.) Plaintiff testified that J.P. came over to the table about five minutes after he had arrived, said "hello" to Plaintiff and sat at the table while Plaintiff talked to the other people sitting there. (See id. 21:1-22:14.) Plaintiff further testified that J.P. remained at the table for approximately ten minutes, did not speak to Plaintiff aside from saying "hello," and left shortly before the bell rang for the students

to go to class. (See id. 22:14-23:14.)  Plaintiff stated that he did not hand J.P. a pack of cigarettes under the table and did not give J.P. anything to hold that day. (See id. 25:16-24.)

Defendant conducted a field test of the green leafy substance in the box of cigarettes and found that it tested positive for marijuana. (Exh. B to Def.'s Mot. Summ. J.)  Later in the day on December 6, Plaintiff went to Vice President Buzzille's office to inquire about the status of the investigation. (Def.'s Rule 56(a)(1) Statement ¶ 18.)  Wolcott Police Detectives Dressel and Theis arrived shortly thereafter and advised Plaintiff of the status of the investigation, placed him under arrest, and transported him to the Wolcott Police Department. (Id. ¶¶ 18-20.)  Pursuant to Plaintiff's request, the officers did not handcuff him while inside the school, but waited until they were in the school parking lot. (Id. ¶¶ 21-22; see also Pl.'s Dep. 36:1-15, Exh. A to Def.'s Mot. Summ. J.)  Plaintiff was charged with possession of marijuana and risk of injury to a minor and was released from the Wolcott Police Department on a written promise to appear in court. (Def.'s Rule 56(a)(1) Statement ¶¶ 23-24.)

Subsequent to his arrest, Plaintiff appeared in court on several occasions, including December 12, 2002, when he was offered an opportunity to participate in the Community Service Labor Program and perform 112 hours of community service. (Id. ¶¶ 25-26.)  Plaintiff again appeared in court on May 23, 2003, whereupon the state and Plaintiff tentatively reached an agreement pursuant to which Plaintiff would submit to a drug urine analysis and if negative, Plaintiff's charges would be nolled, but not dismissed. (Id. ¶ 27; see also Exh. F to Def's Mot. Summ. J.)  Plaintiff agreed to submit to the urine analysis, however, no male court staff or nurse was available and the test was not conducted. (Id. ¶ 28; Exh. F.)  Although the test was not conducted, the State's attorney took the unilateral action of nolling the charges but did not

dismiss them. (Id. ¶¶ 29-30; Exh. F.)  In nolling the charges, the State's attorney stated that it was the State's position that Plaintiff was "clearly involved with at least the use of marijuana." (Id. ¶ 30; Exh. F)  Plaintiff did not refuse the nolle and did not request that the charges be dismissed. (Id. ¶ 31; Exh. F.)

Defendant also asserts that Plaintiff graduated from WHS, smoked cigarettes and marijuana while in high school, and has never been hospitalized or seen a doctor as a result of his arrest. (Def.'s Rule 56(a)(1) Statement ¶¶ 32-34; see also Pl.'s Dep. 12:23-14:25, 59:2-9, 60:6-8:, Exh. A to Def.'s Mot. Summ. J.)

In his Amended Complaint, Plaintiff claims that Defendant "deprived [him] of his freedom from unreasonable arrest, rights pursuant to the laws of search and seizure, freedom from malicious prosecution, equal protection and due process." (Am. Compl. ¶ 34.)  Plaintiff contends that as a result of Defendant's actions, he "suffered loss of civil rights, obloquy, humiliation, mental anguish, and emotional distress." (Id. ¶ 35.)  Moreover, Plaintiff claims that as a result of Defendant's "extreme and outrageous conduct," he "intentionally inflicted emotional distress on [Plaintiff], which resulted in further physical deterioration." (Id. ¶ 37.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 69, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)).  A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue."  Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate, Anderson, 477 U.S. at 255, and the court should "draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion."  Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted).  Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury.  Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted).  The Supreme Court has made clear, however, that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

6

(1986).

Although Rule 56(e) of the Federal Rules of Civil Procedure provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered against" him, the Second Circuit has held that "where the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vt. Teddy Bear Co., 373 F.3d at 244 (quotation omitted).  Importantly, if the moving party's evidence does not meet its burden of production, then district courts should deny the motion for summary judgment even in the absence of an opposing evidentiary issue.  Id. Similarly, an unopposed motion for summary judgment should not be granted where the evidence fails to "show that the moving party is entitled to judgment as a matter of law." Id. (citations omitted).

**III.   DISCUSSION**

   **A.   Termination of Criminal Proceedings in Plaintiff's Favor**

Defendant argues that to maintain a false arrest claim under 42 U.S.C. § 1983, Plaintiff must show that the criminal proceedings at issue terminated in his favor. (Def.'s Mem. Supp. Mot. Summ. J. 4.)  The cases cited by Defendant, however, apply only to § 1983 claims of malicious prosecution and not to false arrest claims.[1] See Cameron v. Fogarty, 806 F.2d 380, 388

---

[1] Even if a false arrest plaintiff was required to show that the criminal proceedings terminated in his favor, it is not clear whether a prosecution resulting in a *nolle* constitutes a "favorable termination."  Cases within the District of Connecticut have held both that a *nolle* does not constitute a favorable termination and, conversely, that it does not necessarily preclude a malicious prosecution claim. See Assegai v. Bloomfield Bd. of Educ., 165 Fed. Appx. 932, 935 n.2 (2d Cir. 2006) (collecting cases).

(2d Cir.), cert. denied, 481 U.S. 1016 (1987); Roesch v. Otorala, 980 F.2d 850, 852 (2d Cir. 1982); Singleton v. City of New York, 632 F.2d 185, 194-95 (2d Cir.), cert. denied, 450 U.S. 920 (1981); Konan v. Fornal, 612 F. Supp. 68, 69-70 (D. Conn. 1985). It is not necessary for a false arrest plaintiff to show that criminal proceedings terminated in his favor, however, a plaintiff cannot make out a federal civil rights claim for false arrest where the arresting officer had probable cause to make the arrest. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

### B. False Arrest Claim Pursuant to 42 U.S.C. § 1983

The elements of a § 1983 claim for false arrest are controlled by state law. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004); Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994). Under Connecticut law, an absence of probable cause is an essential element of a false arrest claim. Davis, 364 F.3d at 433; McHale v. W.B.S. Corp., 187 Conn. 444, 447, 446 A.2d 815 (1982). Moreover, it appears that Connecticut law "place[s] the overall burden of proving the absence of probable cause on the false arrest plaintiff."[2] Davis, 364 F.3d at 433 (citing Beinhorn v. Saraceno, 23 Conn. App. 487, 491, 582 A.2d 208 (1990); Doe v. Bridgeport Police Dep't, 198 F.R.D. 325, 335 (D. Conn. 2001) (recognizing and citing Beinhorn)).

The arresting officer has probable cause to arrest when "(1) police have 'knowledge or

---

[2] As the Davis court notes, the specific question of whether the plaintiff or defendant in a § 1983 false arrest case bears the overall burden of proof with regard to probable cause, i.e., whether it should be treated as an element of the plaintiff's case or as a common law defense, has not been squarely decided. Davis, 364 F.3d at 434 n.8. Although the Davis court declined to decide the issue, see id., it appears that cases applying Connecticut law have placed the burden of proving an absence of probable cause on the plaintiff. See, e.g., Ruggiero v. Krzeminski, 928 F.2d 558, 562-63 (2d Cir. 1991) (assuming in a § 1983 warrantless search claim arising in Connecticut that the plaintiff bore the burden of proving the absence of exceptions to the warrant requirement). This Court need not decide the issue, however, as probable cause is found under either standard.


reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed,' (2) 'by the person to be arrested.'" Cuba-Diaz v. Town of Windham, 274 F. Supp. 2d 221, 229 (D. Conn. 2003) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)). In determining whether probable cause exists pursuant to this objective standard, district courts must look to the "totality of the circumstances," examining those facts available to the arresting officer at the time of the arrest and immediately before it. Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 233, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)). "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Moreover, an officer need not eliminate every plausible claim of innocence before making an arrest. Caldarola, 298 F.3d at 167-68; see also Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (holding that "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest").

Whether probable cause existed is a question that may be resolved as a matter of law on a motion for summary judgment if there is no dispute with regard to the pertinent events and knowledge of the officer. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To satisfy his burden and establish that he had probable cause, Defendant must demonstrate that in procuring Plaintiff's arrest he had a quantum of evidence "more than rumor, suspicion, or even strong reason to suspect." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983).

Defendant puts forth evidence to show that in arresting Plaintiff, he relied on sworn

statements from a teacher and another student and the results of the field test indicating that the item at issue tested positive for marijuana. Moreover, at the later criminal proceeding, the court did not dismiss the charges, but instead went about setting the case down for trial. (See Exh. F to Def.'s Mot. Summ. J.) Further discussions indicated, however, that the State was willing to enter a *nolle* if Plaintiff met certain conditions. (See id.) Because the State's Attorney made the unilateral decision to *nolle* the charges—stating clearly that the evidence suggested that Plaintiff was involved in the exchange of an item that later tested positive for marijuana—the action was resolved. (See id.) At no point, however, did the State's Attorney or the Judge ever question the existence of probable cause for Plaintiff's arrest. (See id.) Viewing the totality of the evidence in the light most favorable to Plaintiff, it appears, based on the facts known to Defendant at the time of arrest and immediately before, he possessed "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed . . . by the person to be arrested." Cuba-Diaz, 274 F. Supp. 2d at 229. The fact that Plaintiff asserted his innocence does not change the probable cause analysis; once Defendant had a "reasonable basis for believing there [was] probable cause, he [was] not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti, 124 F.3d at 128. Accordingly, summary judgment is granted on Plaintiff's claim of false arrest.

    **C.    Qualified Immunity**

Even if an officer lacks probable cause to arrest, he is entitled to qualified immunity from a § 1983 suit for damages if there is "arguable probable cause" to arrest, i.e., if it was reasonable to believe that there was probable cause or officers of reasonable competence could disagree as to the existence of probable cause. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).

According to Escalera, "the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." Id. Because it is found that Defendant had probable cause to arrest Plaintiff, he also meets this lesser standard, i.e., he also had "arguable probable cause" to arrest Plaintiff and therefore is entitled to qualified immunity from the § 1983 suit for money damages.

### D. Intentional Infliction of Emotional Distress

Plaintiff's claim for intentional infliction of emotional distress arises under state law. In order to hold Defendant liable for intentional infliction of emotional distress, Plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Board of Educ., 254 Conn. 205, 210, 757 A.2d 1059 (2000) (quoting Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986)). An intentional infliction of emotional distress claim requires conduct that exceeds "all bounds usually tolerated by decent society . . . ." Petyan, 200 Conn. 254 n.5, quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60. As discussed in the Restatement:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

> decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965). A defendant's conduct that is "merely insulting or displays bad manners or results in hurt feelings" is insufficient to form the basis of an intentional infliction of emotional distress action. Appleton, 254 Conn. at 211 (quoting Mellaly v. Eastman Kodak Co., 42 Conn. Supp. 17, 19, 597 A.2d 846 (1991)).

Even assuming that the first and third prongs have been met in this case—which is far from clear—it has not been shown that Defendant's conduct was either extreme or outrageous. To the contrary, Defendant has shown that he had probable cause to arrest Plaintiff. Moreover, the evidence shows that Plaintiff was not arrested in front of his peers, but in the Vice Principal's office. Pursuant to Plaintiff's request, the arresting officers did not handcuff Plaintiff inside the school, but waited until they were in the parking lot to do so. Plaintiff, in his deposition, admits that he did not notice whether any other people were around the police cruiser at the time he was being handcuffed. (See Pl.'s Dep. 59:10-60:2, Exh. A to Def.'s Mot. Summ. J.) After being arrested, Plaintiff was charged with possession of marijuana and risk of injury to a minor and was released from the Wolcott Police Department on a written promise to appear in court. This is hardly conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965).

Plaintiff has also failed to show that he suffered severe emotional distress as a result of Defendant's actions. In his deposition, Plaintiff admits that he did not sustain any physical

injuries as a result of his arrest, did not seek medical attention for any physical or emotional damages, and graduated from WHS in June 2002. (See Pl.'s Dep. 60:3-11.)  Because there is no evidence in the record to support Plaintiff's conclusory allegations that he "suffered loss of civil rights, obloquy, humiliation, mental anguish, and emotional distress," (Am. Compl. ¶ 35), and that Defendant "intentionally inflicted emotional distress on [him], which resulted in further physical deterioration," (Am. Compl. ¶ 37), summary judgment is granted on Plaintiff's intentional infliction of emotional distress claim.

### E.	42 U.S.C. § 1983 Equal Protection Claim

"The equal protection clause directs state actors to treat similarly situated people alike." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985)).  Moreover, "[t]o prove an equal protection violation, claimants must prove purposeful discrimination . . . directed at an identifiable or suspect class." Id. (citing McCleskey v. Kemp, 481 U.S. 279, 292, 95 L. Ed. 2d 262, 107 S. Ct. 1756 (1987); Kadrmas v. Dickinson Pub. Schs., 487 U.S. 450, 457-58, 101 L. Ed. 2d 399, 108 S. Ct. 2481 (1988)).

Where, as here, the plaintiff does not allege membership in a protected class, he can still prevail in a "class of one" equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000) (per curiam) (a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); see also Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).  In order for Plaintiff to prevail on a "class of one" equal protection claim, he must

produce evidence showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Neilson, 409 F.3d at 105 (2d Cir. 2005) (citing Olech, 528 U.S. at 565); see also Weinstein v. Albright, 261 F.3d 127, 140 (2d Cir. 2001) (rational basis review applies to equal protection claims not based on plaintiff's membership in a suspect class or on effects of the challenged action on fundamental rights).

The Second Circuit has noted, however, that "[w]here a plaintiff in a class of one equal protection case relies on similarity alone, a more stringent standard must be applied than is applied in a racial discrimination case." Neilson, 409 F.3d at 106. Specifically, in a "class of one" case, the plaintiff must provide evidence going to show that his circumstances and another person's circumstances are "prima facie identical" in all relevant respects. Id. at 105 (citing Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002) ("In order to succeed, the [plaintiffs] must demonstrate that they were treated differently than someone who is prima facie identical in all relevant respects.")).

The only evidence Plaintiff presents with respect to his equal protection claim are his allegations, in the Amended Complaint, that unlike J.P., a minor, Plaintiff was also charged with Risk of Injury to a minor, Plaintiff was handcuffed in front of his peers, and that whereas J.P. was given ten days suspension, Plaintiff was given an expulsion notice and had to endure the expulsion process. (Am. Compl. ¶¶ 26-29.) Plaintiff has not shown, however, that he and J.P. were "prima facie identical." J.P. was a minor child and readily gave a statement that coincided

with Ms. Devaney's statement, whereas Plaintiff denied any participation in the matter.  Plaintiff has also not shown that he and J.P. were treated differently.  J.P., like Plaintiff, was arrested and charged with possession of marijuana.  Moreover, J.P. was suspended from school.  Although Plaintiff was given an expulsion notice, he was not expelled.  Plaintiff claims that he was handcuffed in front of his peers, however, he admitted in his deposition that the arresting officers waited until they were in the parking lot to handcuff him, allowing him to walk in front of them on their way out of the school building.  Because it is found that a rational person could have concluded that the slightly different treatment accorded Plaintiff and J.P. was warranted, summary judgment is granted on Plaintiff's equal protection claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 37] is **granted**.  The clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, June  1 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court